**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff-Respondent, | § | |
| | § | |
| v. | § | Cr. No. C-00-338(2) |
| | § | C.A. No. C-05-171 |
| JULIO CESAR VELASQUEZ | § | |
|     Defendant-Movant. | § | |

**MEMORANDUM OPINION AND ORDER DISMISSING
MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE
AND ORDER DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Julio Cesar Velasquez's ("Velasquez") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (D.E. 128),[1] which is deemed filed as of April 3, 2005.[2] The Court concludes that it is not necessary to order a government response because "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the movant is not entitled to relief." Rule 4(b) of the RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS. For the reasons set forth below, the Court DENIES Velasquez's motion because it is time-barred. Additionally, the Court DENIES him a Certificate of Appealability.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

---

[1]      Docket entry references are to the criminal case, Cr. C-00-338.

[2]      Velasquez's motion was received by the Clerk's office on April 11, 2005. It was executed, however, on April 3, 2005, and Velasquez states that he delivered it to prison authorities for mailing on that date. A motion by a *pro se* prisoner is deemed filed at the time it is provided to prison authorities for mailing. Houston v. Lack, 487 U.S. 266, 276 (1988); see also United States v. Young, 966 F.2d 164, 165 (5th Cir. 1992)(providing benefit of Houston v. Lack to *pro se* prisoner in § 2255 proceedings). Thus, the Court deems the motion filed as of April 3, 2005.

1

## II.  FACTS AND PROCEEDINGS

On October 11, 2000, Velasquez was indicted in a two-count indictment with conspiracy to knowingly and intentionally possess with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846 ("Count Two") and knowingly and intentionally possessing with intent to distribute approximately 4 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), and 841(b)(1)(B) ("Count One"). (D.E.1).  On December 21, 2001, he pleaded guilty to Count Two of the indictment pursuant to a written plea agreement.  (D.E. 92, 93).

On April 1, 2002, the Court sentenced Velasquez to 135 months in the custody of the Bureau of Prisons, to be followed by a five-year supervised release term, and imposed a $5000 fine and a $100 special assessment.  (D.E. 109, 112). Judgment was entered against Velasquez on April 5, 2002. (D.E. 112).  He did not appeal.  On April 3, 2005, he filed a motion seeking relief under § 2255 (D.E. 128), which is now pending before the Court.

## III.  DISCUSSION

### A.    Statute of Limitations

A motion made under § 2255 is subject to a one-year statute of limitations, which, in most cases, begins to run when the judgment becomes final.[3]  28 U.S.C. § 2255.  The Fifth Circuit and the

---

[3]    The statute provides that the limitations period shall run from the latest of:

(1) the date on which the judgment of conviction becomes final;
(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

Supreme Court have held that a judgment becomes final when the applicable period for seeking review of a final conviction has expired.  Clay v. United States, 537 U.S. 522, 123 S. Ct. 1072, 1078-79 (2003); United States v. Gamble, 208 F.3d 536, 536-37 (5th Cir. 2000) (per curiam).

A defendant must file a notice of appeal from a criminal judgment not later than ten days after entry of judgment.  Fed. R. App. P.  4(b).  At the time that Velasquez's judgment was entered, Fed. R. App. P. 26 provided that the ten-day period for appealing did ***not*** exclude intermediate Saturdays, Sundays and legal holidays.[4]  Calculated under Rule 26 in effect at that time, then, ten days after April 5, 2002 is April 15, 2002.  In this case, Velasquez did not appeal.  His conviction therefore became final when the time for filing an appeal expired, or on April 15, 2002.

He had one year from that date, or until April 15, 2003, to file a § 2255 motion.  Because he did not file his motion until April 3, 2005, his motion was filed almost two years late.  Velasquez recognizes that his motion is not timely, but argues that the Court should consider it anyway, essentially arguing that he is asserting a claim under the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (Jan. 12, 2005) and that he could not have challenged his sentence before Booker was decided.  (See D.E. 128 at p. 3).  As discussed in the next section of this Order, his argument is unavailing.

**B.     Timeliness of Booker claim**

Velasquez's motion relies, in large part, on the Supreme Court's recent decision in Booker. Specifically, he argues that his sentence is unconstitutional because it was enhanced on several

---

[4]      At the time final judgment was entered against Velasquez, Rule 26(a),  Fed. R. App. P., provided that when calculating time under the Federal Rules of Appellate Procedure, a litigant should "[e]xclude intermediate Saturdays, Sundays, and legal holidays when the period is less than 7 days, unless stated in calendar days."  Effective December 1, 2002, the rule reads that a litigant should "exclude intermediate Saturdays, Sundays, and legal holidays when the period is less than 11 days, unless stated in calendar days."  See 2002 Adv. Comm. Notes, Fed. R. App. P. 26.

grounds that were based on facts contained in the PSR and found by the Court by a preponderance of the evidence, rather than found by a jury beyond a reasonable doubt. (Specifically, he challenges a relevant conduct enhancement for an additional 6 kilograms of cocaine and for possession fo a gun). He asks that he be resentenced, after his offense level is calculated without the enhancements.

Because he relies on Booker, the Court also addresses separately whether any claim pursuant to Booker. If Booker applies retroactively to cases on collateral review, then his Booker claim is arguably timely under § 2255(3). See supra note 3. For the reasons set forth herein, however, the Court concludes that Booker does not apply retroactively to cases already final on direct review when it was decided. Thus, any claim based on Booker is also subject to dismissal because it is not timely.

### 1.   **Booker** Background

To explain the Court's conclusions regarding the retroactivity of Booker, some background regarding both Booker and its predecessor, Blakely v. Washington, 124 S. Ct. 2531 (2004), is warranted. In Blakely, the Supreme Court held that the trial court's sentencing of the state defendant violated his Sixth Amendment right to a jury trial. Specifically, the court held that Apprendi v. New Jersey, 530 U.S. 466 (2000) and other precedents preclude a judge from utilizing a fact found by him using a preponderance of the evidence standard, in order to impose more than the maximum sentence that could be imposed based solely on the facts reflected in the jury verdict or admitted by the defendant. Blakely, 124 S. Ct. at 2537-38. Blakely involved a defendant sentenced in a Washington state court pursuant to Washington's determinate sentencing scheme. See generally id.

Booker addressed Blakely's impact on the federal sentencing guidelines, which are applied in federal criminal cases. Booker consists of two majority decisions, and several dissenting decisions, and its analysis is somewhat detailed.   At the risk of oversimplifying the decision, however, the holding of Booker was two-fold. First, in the first majority opinion, the Court held that

Blakely applied to the federal guidelines.  As with the sentencing scheme at issue in Blakely, the mandatory nature of the federal sentencing guidelines implicated defendants' Sixth Amendment rights, because the guidelines can require judges to find facts and sentence defendants to more severe sentences than could be imposed based solely on facts found by the jury or admitted in the plea colloquy.  Booker, 125 S. Ct. at 750-51, 756.

In the second majority opinion, the Supreme Court discussed the remedy to be applied in light of its first holding.  The remedy selected by the majority of the justices was to excise certain portions of the guidelines (most notably the provision making them mandatory, 18 U.S.C. § 3553(b)(1), and a provision dealing with appeals from sentencing decisions, 18 U.S.C. § 3742(e)), but to preserve the scheme as a whole.  Booker, 125 S. Ct. at 756-57. As a result, the Court's decision rendered the guidelines "effectively advisory."   Id. at 757.  The court held, however, that district courts are required to consider the advisory guideline sentence when sentencing within the statutory ranges set by Congress.  Id.

For the reasons discussed in the next section of this Order, the Court concludes that relief under Booker is not available on collateral review to a defendant like Velasquez, whose conviction became final prior to the date Booker was decided, January 12, 2005.

2.      **Retroactivity Analysis**

Neither of the majority opinions states that Booker should be applied retroactively to convictions and sentences that are already final.  Indeed, Justice Breyer's decision concerning the proper remedy indicates that the Court's Booker holdings should be applied "to all cases on direct review." Booker, 125 S. Ct. at 769 (emphasis added).  By implication, then, the statement would

5

appear to preclude application to cases not on direct review, i.e., those in which the convictions and sentences have become final.[5]

Even more pertinent to the issue of Booker and Blakely retroactivity is the Supreme Court's decision in Schriro v. Summerlin, 124 S. Ct. 2519 (2004), handed down the same day as Blakely.  In Schriro, the Supreme Court was faced with determining whether its decision in Ring v. Arizona, 536 U.S. 584 (2002), could be applied retroactively on collateral review.  Ring, like Blakely, applied the principles of Apprendi.  In Ring, the Court held that a jury must find the aggravating facts statutorily required to impose the death penalty.   In Schriro, the Court first concluded that Ring was a new rule of procedure (as opposed to a substantive rule), and noted the general principle that new rules of procedure do not apply retroactively.  124 S. Ct. at 2522-23.  It then determined that the rule in Ring did not fall within any of the narrow exceptions to the general principle, as set forth in Teague v. Lane, 489 U.S. 288 (1989), including the exception for "watershed rules of criminal procedure" essential to the fairness of the proceedings.  Schriro, 124 S. Ct. at 2524-25.  It concluded, therefore, that "Ring announced a new procedural rule that does not apply retroactively to cases already final on direct review." Schriro, 124 S. Ct. 2526.

This Court finds the reasoning in Schriro to be persuasive and pertinent here.  Like the rule in Ring, the rule announced in Blakely (and extended to the federal guidelines in Booker) is a new rule of procedure, but does not fall within any of the Teague exceptions.  Accordingly, Blakely and Booker do not apply retroactively to cases on collateral review.

---

[5]       The Court recognizes, of course, that retroactivity was not an issue in Booker or its companion case, Fanfan, both of which came to the Supreme Court as direct criminal appeals.  Thus, the quoted language arguably has no meaning as to Booker's retroactivity in collateral proceedings.

The Fifth Circuit has not yet addressed whether <u>Booker</u> is retroactively applicable on initial collateral review, although it recently held that the Supreme Court has not made <u>Booker</u> retroactive, for purposes of allowing second or successive petitions under 28 U.S.C. § 2255. <u>In re Elwood</u>, __ F.3d __, 2005 WL 976998 (5th Cir. April 28, 2005).  The Second, Sixth, Seventh, and Eleventh Circuits have all addressed the retroactivity of <u>Booker</u> on initial collateral review, however, and have reached the same conclusion as the Court does herein.  <u>See</u> <u>McReynolds v. United States</u>, 397 F.3d 479 (7th Cir. 2005)(concluding that <u>Booker</u> states a new non-watershed procedural rule and does not apply retroactively to criminal cases final before its release); <u>United States v. Humphress</u>, 398 F.3d 855 (6th Cir. 2005)(same); <u>Varela v. United States</u>, 400 F. 3d. 864 (11th Cir.  2005)(same); <u>Guzman v. United States</u>, __ F.3d __, 2005 WL 803214 (2d Cir. April 8, 2005)(same).  Similarly, in a post-<u>Booker</u> decision, the Tenth Circuit rejected a  § 2255 movant's argument that  <u>Blakely</u> applies retroactively.  <u>United States v. Price</u>, 400 F.3d 844 (10th Cir. 2005).  In so doing, the <u>Price</u> court utilized reasoning which would be equally applicable to <u>Booker</u>.  <u>See generally</u> <u>id.</u>

Because the Court concludes that <u>Booker</u> is not retroactive to cases on collateral review, and because Velasquez's conviction became final prior to January 12, 2005, he is not entitled to relief under <u>Booker</u>.

## C.    Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253 (c)(1)(A).  A COA, however, "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."

7

Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 1039 (2003).  Although Velasquez has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (it is appropriate for district court to address *sua sponte* issue of whether a COA should be granted or denied, even before one is requested).

To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (emphasis added); see also United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (applying Slack to COA determination in context of § 2255 proceedings). It is unnecessary for the Court to decide whether Velasquez has stated a valid claim for relief, because he cannot establish the second Slack criterion.  That is, reasonable jurists could not disagree that his motion is time-barred.  Accordingly, Velasquez is not entitled to a COA.

## IV.  CONCLUSION

For the above-stated reasons, Velasquez's motion under 28 U.S.C. § 2255 is DENIED.  The Court also DENIES him a Certificate of Appealability.

ORDERED this 10th day of May, 2005.

_____
Janis Graham Jack
United States District Judge

8